UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LAWRENCE CATRINAR,

       Plaintiff,                    No. 14-11872

v.                                  District Judge John Corbett O'Meara
                                    Magistrate Judge R. Steven Whalen

WYNNESTONE COMMUNITIES
CORPORATION, ET AL.

       Defendants.
                               /

**OPINION AND ORDER**

On May 9, 2014, Plaintiff Lawrence Catrinar filed suit against his former employer Defendant Wynnestone Communities Corporation and Gilbert B. Silverman ("Defendants") alleging violations of the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2614, *et. seq.*, as well as breach of contract and promissory estoppel. Before the Court is Plaintiff's Motion for Discovery Sanctions [Doc. #68]. For the reasons discussed below, the motion will be DENIED.[1]

---

[1] Although Plaintiff requests a default judgment as an alternative sanction under Fed.R.Civ.P. 37, the relief I am granting is non-dispositive. I therefore proceed by Order under 28 U.S.C. § 636(b)(1)(A), rather than Report and Recommendation under 28 U.S.C. § 636(b)(1)(B). See *Bell–Flowers v. Progressive Ins. Co.*, 2005 WL 3434818, at * 1, 2 n. 1 (W.D.Tenn.Dec.13, 2005) ("The majority of courts to consider the issue have concluded that when a party brings a motion for discovery sanctions, the sanction chosen by the magistrate judge, rather than the sanction sought by the moving party, governs the magistrate judge's authority over the motion." (citing cases)); *Coleman v. Canton*

-1-

### I. Legal Principles re: Rule 37 Sanctions

Fed. R. Civ. P. 37 provides for sanctions for failure to make disclosures or cooperate in discovery. Rule 37(b) provides for sanctions where a party fails to comply with a court order regarding discovery, including, under Rule 37(b)(2)(A)(vi), entry of default judgment where it is the defendant who has been disobedient. A motion for sanctions under this Rule is addressed to the Court's discretion. *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 643, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976); *Regional Refuse Systems, Inc. V. Inland Reclamation Co.*, 842 F.2d 150, 154 (6th cir. 1988). However, entry of a default judgment against a party "for failure to cooperate in discovery is a sanction of last resort," and may not be imposed unless noncompliance was due to "willfulness, bad faith, or fault." *Bank One of Cleveland, N.A. v. Abbe*, 916 F.2d 1067, 1073 (6th Cir. 1990)(citations omitted). *See also Grange Mut. Cas. Co. v. Mack,* 270 Fed. Appx. 372, 376 (6th Cir.2008) (explaining that default judgment is the court's most severe discovery sanction).

The Court's discretion is informed by the four-part test described in *Harmon v. CSX Transportation, Inc.*, 110 F.3d 364, 366-67 (6th Cir. 1997): (1) whether the party's failure is due to willfulness, bad faith, or fault; (2) whether the adversary was prejudiced by the dismissed party's conduct; (3) whether the dismissed or defaulted party was

---

*Township*, 2010 WL 3906015, *1 (E.D.Mich.2010) ("a party's characterization of a motion as being 'dispositive' or 'nondispositive' does not make it so"); *Beattie v. CenturyTel, Inc.*, 2009 WL 5066676, *1 (E.D.Mich.2009).

warned that failure to cooperate could lead to dismissal or entry of default judgment; and (4) whether less drastic sanctions were imposed or considered before dismissal or default judgment was ordered. *See also Bank One of Cleveland, N.A. v. Abbe*, 916 F.2d 1067, 1073 (6th Cir. 1990).

In deciding whether to impose "the draconian sanction" of default judgment, the first factor–the party's willfulness or bad faith in failing to comply with a discovery order–looms large. *Intercept Security Corp. V. Code-Alarm, Inc.*, 169 F.R.D. 318, 321-22 (E.D. Mich. 1996), citing *Societe Internationale Pour Participations Industrielles et Commerciales, S.A. v. Rogers*, 357 U.S. 197, 212, 78 S.Ct. 1087, 2 L.Ed.2d 1255 (1958). However, a prior warning that failure to comply with a discovery order will result in a default judgment is pivotal both to the determination of willfulness and to the ultimate decision to order that sanction. *See Harris v. Callwood*, 844 F.2d 1254, 1256 (6th Cir. 1988).

## II.   DISCUSSION

The centerpiece of Plaintiff's motion is his very serious allegation that the Defendants fabricated and produced false evidence in this case. In the introductory paragraph of the brief in support of Plaintiff's motion, he states emphatically:

> "It is now clear that Defendants...have manipulated the discovery process in bad faith from the inception of this case. This includes the ***actual fabrication of evidence*** to support their baseless claims and to undermine Plaintiff's claims, and the selective production of documents to prevent Plaintiff from obtaining necessary discovery." (Emphasis in original).

The allegation of false evidence stems from Defendant Silverman's apparent re-write of an email originally sent to Kathryn Morris on December 21, 2008, concerning the E&S Plan and whether Silverman was aware of the plan or authorized any amendments to the plan. The original email, which Plaintiff refers to as "the real email," is written partially in Spanish, and reads as follows:

> "PS...no idea what this is doc. Si, complete...pero no comprendo! Dia normal! Gracia's por todo. Happy everything. Buzz.

Plaintiff states that Defendants produced this email to them, although it was "buried within the 86,000 emails" that were uploaded into a database "that was made available for Plaintiff to review" in 2016.

Plaintiff states that earlier in the litigation, specifically on October 27, 2014, Silverman responded to an interrogatory asking when he first learned of what he then claimed was the "secret and unauthorized" E&S Plan. Silverman stated in his interrogatory response, "Silverman learned of the existence of the E&S Plan in December 2008 when he received various emails from [Kathryn] Morris requesting that he sign an amendment thereto." *See* Exhibit 2, Plaintiff's motion [Doc. #68]. Silverman also produced at that time an email to Morris, also dated December 21, 2008, which Plaintiff refers to as "the fake email." That earlier produced email reads as follows:

> "Kathy...no idea what this is. You never discussed this and neither did Sheldon. I'm the board and only officer except Tom and you keep ignoring it. I'll give bonus's as I've been and dependent on hitting budgets. 0-40-0100% as I have been and discussed. I've never done anything like this as its way too complicated. I'll discuss it when you get back again. And as for Sheldon, it's a big mistake.   Buzz"

Both the "real email" and the "fake email" are dated December 21, 2008. Plaintiff argues that the "fake email" fraudulently supports Silverman's position that he did not authorize an amendment to the E&S Plan, and that the "real email" offers no such support. However, Defendant concedes that the native Outlook email file of what Plaintiff refers to as the "fake email" shows that it was created in January 2012, not December 2008. Attached to Defendants' response [Doc. #7] is the declaration of Gilbert Silverman, in which he states that he forwarded the December, 2008 email to himself in January, 2012. He states, in ¶ 5 of his declaration, "Specifically, it appears that I re-wrote in English and elaborated on my original message, which was mostly in Spanish. The point of the two emails is the same."

Thus, we have two emails, both ostensibly dated December 21, 2008, but the more detailed one having actually been created over three years later in January of 2012. The basic questions with regard to sanctions under Rule 37 are (1) did Silverman manufacture a false email in order to fabricate a response to Plaintiff's discovery requests, and (2) did Silverman deliberately conceal "real" evidence? The answers to these questions are particularly salient to the first *Harmon* factor, that is, whether Silverman's actions were done willfully or in bad faith.

Plaintiff filed his complaint on May 9, 2014, about two years and four months after the "fake email" was created. Now, should this case go to trial, the discrepancy between the two emails and Silverman's explanation as to how the later email came to be created may undoubtedly be exploited to the Plaintiff's advantage. But whatever the ultimate

evidentiary import of the "fake email," it clearly was not manufactured in response to a discovery request in a case that was filed over two years later. Therefore, in determining whether a discovery sanction as drastic as a default judgment should be imposed, I do not find that Plaintiff has shown "willfulness, bad faith, or fault" with respect to the creation of the 2012 email.

Moreover, Plaintiff did not discover the "real email" through means extrinsic to the Defendants' own production efforts; instead, the Defendants themselves produced it, albeit somewhat late in the game. On January 21, 2016, I entered an order [Doc. #59] granting in part and denying in part Plaintiff's Third Motion to Compel Discovery and for Discovery Sanctions [Doc. #38]. As part of his motion, Plaintiff requested an order permitting him to search Defendants' email servers. I denied that request, but ordered Defendants to "provide to Plaintiff a written declaration, under oath, detailing the steps taken to locate responsive documents and the results of that search." Granting in part the motion to compel, I ordered:

> "A. Defendants will undertake a diligent and good-faith search for responsive documents, and produce, or permit the inspection of, all documents within their possession or control that are responsive to Plaintiff's requests, subject to any claim of privilege. If the Defendants claim privilege as to any documents, they will submit a privilege log.
>
> B. As to any documents that Defendants claim they do not have, the person or persons who searched for those documents will provide to Plaintiff a written declaration, under oath, detailing the steps taken to locate responsive documents and the results of the search.
>
> C. Responsive documents will be produced or made available for inspection within 30 days of the date of this Order."

In response to my order, the Defendants produced for Plaintiff's inspection a large volume of emails, including the "real email" that was created on December 21, 2008. The Defendants also produced the declaration of Jessica Eicken, a Silverman Development Companies employee, who described the steps she undertook to locate documents responsive to Plaintiff's discovery requests. *See* Exhibit A to Defendants' Response [Doc. #70]. Ms. Eicken states that she and other Wynnestone employees spent "dozens of hours" searching for documents, and that her primary responsibility was searching for and collecting email correspondence. *Eicken Declaration*, ¶¶ 3-4. As part of her efforts, she enlisted the aid of Suntel, a company that provided technical service to Wynnestone. *Id.* ¶ 5. A Suntel employee alerted Ms. Eicken to three email archives that the employee discovered when Wynnestone moved its offices in May of 2016. This was not the person who had previously been asked to search for responsive discovery material. *Id.* ¶ 9. It was within these email archives that the "real email" was located and produced to Plaintiff.

In my previous order [Doc. #59], I denied discovery sanctions, finding that Defendants had not acted willfully or in bad faith. I also ordered Defendants to provide additional discovery to the extent that a diligent and good-faith search uncovered responsive documents. They did just that, and the "real email" was produced, along with a trove of other emails. It is difficult for me to find bad faith when the Defendants complied with my order. While Plaintiff characterizes the "real email" as a "needle in a haystack," it is not unusual that a business's electronically stored information is

voluminous. But more importantly, Defendants did not destroy or withhold the original 2008 email, they produced it. At trial, their production of this evidence to Plaintiff will most likely work to their detriment. Again, Plaintiff has not satisfied the first *Harmon* factor.

Nor has Plaintiff met the second *Harmon* factor, prejudice. While he obtained the original email later in the litigation, in or around August of 2016, discovery was extended, by stipulation, to August 30, 2017 [Doc. #75]. The parties' stipulation specifically referenced the issue that "the newly produced email archives directly relate to one of the central issues of Plaintiff's claims." Those archives, which contained about 2,000 pages of emails, were the ones "which Defendants maintain their information technology vendor had not discovered during prior searches for documents responsive to Plaintiff's requests for production." This extension of discovery cures any prejudice which might otherwise have occurred as the result of the delay in Defendants' production of the emails.

The third and fourth *Harmon* factors may be considered together. Defendants have not been previously warned that a default judgment or other sanctions could be imposed for discovery violations, nor have any lesser sanctions been imposed.

## III. CONCLUSION

Plaintiff's Motion for Discovery Sanctions [Doc. #68] is therefore DENIED.

IT IS SO ORDERED.

        s/R. Steven Whalen
        R. STEVEN WHALEN
        UNITED STATES MAGISTRATE JUDGE

Date: September 30, 2017

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on September 30, 2017, by electronic means and/or ordinary mail.

        s/H. Monda in the absence of C. Ciesla
        Case Manager